IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE CITY CORPORATION, a Utah municipal corporation; BP PRODUCTS NORTH AMERICA INC., a Maryland corporation; and CHEVRON U.S.A. INC., a Pennsylvania corporation, <br><br> Plaintiffs, <br><br><br><br><br><br> vs. <br><br><br> ERM-WEST, INC., a California corporation; COMPASS ENVIRONMENTAL, INC., a Delaware corporation; and WRS INFRASTRUCTURE AND ENVIRONMENT, INC., a North Carolina corporation, d/b/a/ WRSCOMPASS, INC., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART ERM'S MOTION FOR JUDGMENT ON THE PLEADINGS <br><br><br><br><br><br> Case No. 2:11-CV-1174 TS |

This matter is before the Court on Defendant ERM-West, Inc.'s ("ERM") Motion for Judgment on the Pleadings.[1]  For the reasons provided more fully below, the Court will grant in part and deny in part ERM's Motion.

---

[1]Docket No. 30.

1

I.  BACKGROUND

The following statement of the case is drawn from Plaintiff's First Amended Complaint and the documents referenced therein.

This dispute arises from the environmental remediation of hydrocarbon-impacted sediments from a section of the Northwest Oil Drain ("NWOD") canal.  In 2003, Plaintiffs Salt Lake City Corporation (the "City"), BP Products North America, Inc. ("BP"), and Chevron USA, Inc. ("Chevron") (referred to collectively as "Plaintiffs") entered into an Administrative Order on Consent (the "AOC") with the Environmental Protection Agency ("EPA") to conduct remediation on the NWOD Canal.  Plaintiffs formed an association called the Northwest Oil Drain Working Group (the "Working Group") to carry out this obligation.

Pursuant to the AOC, Plaintiffs were required to effect complete physical removal of hydrocarbon-impacted sediments from the NWOD canal.  The AOC also specifically required that the Working Group designate a project coordinator to be responsible for administration of the actions required under the AOC.  On August 23, 2003, the City entered into a Professional Services Agreement (the "PSA") with ERM.  Plaintiffs allege that the City retained ERM, not merely to represent the City, but to represent the entire Working Group.  According to the Recitals of the PSA, ERM was to: (1) "provide the [Working Group] Project Management Services to oversee the construction phase of the Northwest Oil Drain clean up"; (2) "handle all 'daily duties' that are required consistent with the remedial alternative selected"; and (3) "assist the Working Group in preparing submittals required in the AOC."[2]

---

[2]Docket No. 4 Ex. 1, at 1.

ERM prepared a Project Manual, which included technical specifications and detailed objectives for the removal of sediments from the NWOD canal.  In December of 2003, the Project Manual was used in soliciting bids to complete the work at the NWOD canal.  ERM identified contractors to invite to bid on the NWOD project and sent bid invitations on behalf of the Working Group.  Compass Environmental, Inc. ("Compass") submitted a bid proposing to use an innovative hydraulic dredge method for removal of the majority of the sediment.  ERM assisted the Working Group in reviewing all bids and recommended that the Working Group hire Compass.  In March of 2004, Compass was awarded the NWOD project contract.

ERM and Compass developed a work plan to accomplish the complete removal of impacted sediment down to the original clay surface of the canal.  The work plan included a Quality Assurance Project Plan ("QAPP") and Sampling and Analysis Plan ("SAP") to ensure completion of project objectives.  The Working Group's contract with Compass provided that Compass "shall adhere to the requirement of the QAPP prepared for the project by the PROJECT MANAGER" and "all sampling and analysis will be performed by the CONTRACTOR in accordance with the [SAP] prepared by the PROJECT MANAGER."[3]

Remediation work commenced on the NWOD canal in August of 2004.  The first quantitative samples were taken in August of 2005.  Two of the samples showed a concentration of sediments above the required cleanup level.  Instead of ceasing dredging operations, ERM transmitted the results to the EPA in its September 2005 progress report and continued dredging. ERM obtained verbal permission from the EPA for the exceedances in this first group of samples.  Later sampling results from other sections of the NWOD canal resulted in similar

[3]Docket No. 3 Ex. 4, at 34.

3

concentrations of sediments above the required cleanup level.  ERM admitted that these later

samples exceeded the requirements, but requested that the EPA concur that the samples were

acceptable without further action, similar to the results from the first canal section.  Plaintiffs

allege that after each of these samples were taken, ERM failed to follow the re-sampling

procedures outlined in the SAP and QAPP.

ERM and Compass concluded that the removal action was complete and Compass

demobilized from the site in December of 2006.  In April of 2007, ERM submitted a final report

to the EPA asserting that all requirements of the AOC had been met.  In its final report, ERM

requested that the EPA close the site.  In June of 2007, the EPA responded and refused to close

the site, indicating that it did not approve the exceedances at any location beyond the first.  The

EPA also requested further sampling to verify removal of all sediments from the NWOD canal.

In March of 2008, ERM retained a consulting firm to perform further sampling on the

NWOD canal.  Every sample failed to meet the cleanup levels for total petroleum hydrocarbons

and only one sample complied with cleanup levels for oil and grease.  In early 2009, more

extensive and detailed sampling and sediment characterization was performed.  As a result of this

testing, it was discovered that hydrocarbon-impacted sediments were left in place throughout the

entire length of the NWOD canal in thicknesses of up to five feet.

In their First Amended Complaint, Plaintiffs bring three claims against ERM.  Plaintiffs'

first and third causes of action are brought on behalf of the City against ERM for breach of the

PSA and breach of the implied warranty to use reasonable and customary care in the provision of

professional services.  In their fourth cause of action, Plaintiffs bring a claim against ERM for

professional negligence.  Plaintiffs allege that ERM failed to perform its work with the requisite

care of an ordinary, reasonable professional in its field and thereby breached its duty to the

Working Group.

ERM moves the Court to dismiss Plaintiffs' claims against it for failure to state a claim

under Federal Rule of Civil Procedure 12(c).

## II.  STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to

dismiss under Rule 12(b)(6)."[4]  In considering a motion to dismiss for failure to state a claim

upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as

distinguished from conclusory allegations, are accepted as true and viewed in the light most

favorable to Plaintiffs as the nonmoving party.[5]  Plaintiffs must provide "enough facts to state a

claim to relief that is plausible on its face,"[6] which requires "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation."[7]  "A pleading that offers 'labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[8]

---

[4] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)).

[5] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[9]  As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[10]

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[11]  Thus,

> notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[12]

## III.  DISCUSSION

ERM asserts that dismissal is proper because (1) Plaintiffs' first and third causes of action are barred by the applicable statute of limitations, and (2) Plaintiffs' professional negligence

---

[9] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[10] *Iqbal*, 556 U.S. at 678-79 (alteration in original) (internal quotation marks and citations omitted).

[11] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[12] *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

claim is barred by the economic loss rule.  The Court will address each of ERM's arguments in turn.

A.      STATUTE OF LIMITATIONS

"A federal court sitting in diversity applies state law for statute of limitations purposes."[13] Additionally, tolling rules of the forum state must be followed because "they are 'an integral part of the several policies served by the statute of limitations.'"[14]

As a threshold issue, there is some dispute as to the proper Utah statute of limitations to be applied in this case.

Plaintiffs assert that Utah Code Annotated § 78B-2-225 is on point because this action is related to improvements in real property.  Section 78B-2-225 provides: "An action by or against a provider based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction."  This statutory section is not meant to provide a longer statute of limitations period for Plaintiffs; rather it is a legislative attempt to reduce "costs and hardships" suffered by providers of construction services in defending against claims many years after completion of an improvement.[15]  To the extent Plaintiffs rely on § 78B-2-225 to extend the statute of limitations on the City's breach of contract claims, such reliance is misplaced.  Section 78B-2-225(9) specifically provides that "[t]his

---

[13]*Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005) (citing *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109-10 (1945)).

[14]*State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1228 (10th Cir. 2008) (quoting *Cook v. G.D. Searle & Co.*, 759 F.2d 800, 802 (10th Cir. 1985)).

[15]*See* Utah Code Ann. § 78B-2-225(2).

section does not extend the period of limitation or repose otherwise prescribed by law."  As such, the Court finds § 78B-2-225 inapplicable to this case.

ERM asserts that Utah Code Annotated § 78B-2-309(2) is applicable to the City's breach of contract claims.  That code section states in relevant part that "[a]n action may be brought within six years . . . upon any contract, obligation, or liability founded upon an instrument in writing."  Plaintiffs do not appear to dispute the general applicability of this code section. Rather, the parties' dispute centers on the date the six-year statute of limitations began to run.

"In Utah, a statute of limitations begins to run when a cause of action accrues."[16]  "The general rule is that a cause of action accrues upon the happening of the last event necessary to the cause of action."[17]  "A contract action ordinarily accrues at the time of breach."[18]

In *Brigham Young University v. Paulsen Construction Company*,[19] the Utah Supreme Court adopted the following general rule: "In construction contract cases, an owner's claim of defective construction against a general contractor is generally considered to accrue on the date that construction is completed."[20]  In *Paulsen*, the plaintiff university brought actions against two

---

[16]*Clarke v. Living Scriptures, Inc.*, 114 P.3d 602, 603 (Utah Ct. App. 2005) (citing *Butcher v. Gilroy*, 744 P.2d 311, 313 (Utah Ct. App. 1987)).

[17]*Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1373 (Utah 1987) (internal quotation marks and citation omitted).

[18]*S&G Inc. v. Intermountain Power Agency*, 913 P.2d 735, 740 (Utah 1996) (citing *Upland Indus. Corp. v. Pac. Gamble Robinson Co.*, 684 P.2d 638, 643 (Utah 1984); *Koulis v. Standard Oil Co. of Cal.*, 746 P.2d 1182, 1186 (Utah Ct. App. 1987)).

[19]744 P.2d 1370.

[20]*Id*. at 1373 n.3 (citing *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 330 S.E.2d 344, 345 (Ga. 1985) (period of limitation on action for breach of construction contracts runs from date of substantial completion of building); *Lewis v. Axinn*, 473 N.Y.S.2d 575, 576 (N.Y. App.

contractors, alleging negligent failure to perform supervisory contracts with the university.[21]   The

university's allegation was that the contractors "negligently allowed subcontractors to install pipe

insulation material that did not conform to the project construction specifications."[22]

Here, Plaintiffs assert that ERM was acting in the same capacity as the contractors in

*Paulsen*.  As stated in the recitals of the PSA, ERM was to "provide the [Working Group] Project

Management Services to oversee the construction phase of the Northwest Oil Drain clean up"

and "handle all 'daily duties' that are required consistent with the remedial alternative

selected."[23]  According to the allegations of Plaintiffs' First Amended Complaint, ERM also

oversaw the bid process and recommended that the Working Group accept Compass's bid to

furnish the necessary work.  ERM attempts to downplay its involvement in the NWOD project

and casts its role as merely an engineering consultant.  However, the allegations of Plaintiffs'

First Amended Complaint, in combination with the requirements of the contracts referenced

therein, demonstrate that ERM played an active managerial role in the NWOD project.

It is true that no Utah court has applied the general rule from *Paulsen* to engineers or

architects.  However, for the reasons provided above, the Court finds that ERM was not acting

---

Div. 1984) (general rule is that completion of construction is date of accrual for owner's claims
of defective construction against general contractor); *Alexander v. Gerald E. Morrissey, Inc.*, 399
A.2d 503, 505 (Vt. 1979) (absent fraudulent concealment, period of limitation begins running
when construction is completed); *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d
345, 351 (N.C. 1978) (cause of action against contractor accrues at completion of construction,
not at the moment his employee performs negligently, because defects are subject to correction as
long as building remains under construction)).

[21]*Id*. at 1370.

[22]*Id*. at 1372.

[23]Docket No. 4 Ex. 1, at 1.

merely in the role of an engineer; rather, ERM took upon itself a supervisory role similar to that of the contractors in *Paulsen*.  Therefore, the Court finds *Paulsen* applicable to the case at hand and will deem the accrual of the breach to have occurred at the time of completion of the NWOD project.

Assuming the applicability of *Paulsen*, ERM argues that its work on the separate sections of the NWOD canal constitute separate phases with separate accruals for purposes of the statute of limitations.  According to ERM, such an approach is supported by the facts of *Paulsen*.  In *Paulsen*, the work consisted of two distinct phases with separate contracts awarded to two different contractors.[24]  The *Paulsen* court found that the statute of limitations began to run as to each respective contract at the completion of the phase to which it pertained.[25]  In the instant case, work on the NWOD canal was completed in phases pertaining to different geographical segments of the canal.  However, the entire contract was performed by ERM.  Furthermore, ERM and Compass were free to re-visit and remediate any section of the canal throughout the life of the contract.  Given these key differences, the Court cannot accept ERM's multiple-phase-accrual argument.

The Court would further note that even if it found *Paulsen* inapplicable, it would still be constrained to reject ERM's statute of limitations arguments because—viewing the facts in the light most favorable to Plaintiffs—the Court is unable to find as matter of law that ERM's alleged breach occurred outside the limitations period.  Because factual issues as to these claims exist, dismissal under Rule 12(c) would be improper.

---

[24]*Paulsen*, 744 P.2d at 1371.

[25]*Id*. at 1373.

10

In sum, the Court will deny ERM's Motion to the extent its seeks dismissal of the City's breach of contract claims on statute of limitations grounds.

B.      PROFESSIONAL NEGLIGENCE

ERM asserts that Plaintiffs' fourth cause of action for professional negligence is barred by the economic loss rule.  Plaintiffs contend that the economic loss rule does not bar recovery because: (1) ERM had a professional duty to the Working Group outside its contract with the City due to the nature of its services; (2) Plaintiffs' claims are not for purely economic loss; and (3) questions of fact exist that foreclose dismissal of Plaintiffs' professional negligence claims at this stage of the litigation.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[26]  In *Hermansen v. Tasulis*,[27] the Utah Supreme Court expressly adopted the following interpretation of the economic loss rule provided by the Colorado Supreme Court:

> "The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached.  Thus, our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."[28]

---

[26]*SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs.*, 28 P.3d 669, 679 (Utah 2001).

[27]48 P.3d 235 (Utah 2002).

[28]*Id*. at 240 (quoting *Grynberg v. Agri Tech. Inc*., 10 P.3d 1267, 1269 (Colo. 2000)).

"When an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'"[29]

> Although the rule appears to have begun as only a means to deter parties to a contract from seeking tort remedies in addition to the remedies available under their contract, cases from the Utah Supreme Court have also applied the economic loss rule to parties who were not parties to a contract.[30]

1.     DUTY

The first step in determining whether the economic loss rule bars Plaintiffs' professional negligence claim is to establish whether ERM owed an independent duty to Plaintiffs beyond the obligations owed the City under the PSA.  "'The question of whether a duty exists is a question of law' and involves the 'examination of the legal relationships between the parties,' 'an analysis of the duties created by these relationships,' and 'policy judgments applied to relationships.'"[31]

At the outset, the Court would note that no Utah court has recognized a duty in such a circumstance and this Court is not inclined to break new ground where Utah courts have yet to

---

[29]*Id*. (quoting *Town of Alma v. Azco Constr., Inc*., 10 P.3d 1256, 1263 (Colo. 2000)).

[30]*Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1266 (D. Utah 2004) (citing *Am. Towers Owners Ass'n v. CCI Mech., Inc.,* 930 P.2d 1182 (Utah 1996) (barring condominium homeowners under the economic loss rule from collecting economic damages from contractors for faulty construction in the plumbing and mechanical systems of the building where homeowners were not parties to any of the construction contracts and had no enforceable rights as third-party beneficiaries); *Fennell v. Green,* 77 P.3d 339, 344 (Utah Ct. App. 2003) (barring a homeowner's claim against a developer for negligent misrepresentation and finding that "the economic loss rule applies to prevent the imposition of 'economic expectations' on non-contracting parties")).

[31]*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 244 (Utah 2009) (quoting *Yazd v. Woodside Homes Corp*., 143 P.3d 283, 286 (Utah 2006)).

tread.[32]  Plaintiffs acknowledge the dearth of Utah case law on point and cite for support cases from other jurisdictions finding a professional duty for environmental professionals.[33]

The cases cited by Plaintiffs are clearly distinguishable from this case.  The line of cases proffered involve prospective purchasers of property that relied to their detriment on reports prepared by environmental professionals declaring certain properties free from environmental contaminants.[34]  In contrast, here, the parties are all sophisticated entities who were well aware of the hydrocarbon-impacted sediments found in the NWOD canal and specifically contracted to remediate said sediments.  Thus, the duties created by the relationship between the parties took into account the hydrocarbon-impacted sediments and the policy judgments in this case favor enforcing recovery through contract remedies.

In the alternative, even if the Court were to recognize a professional duty for environmental professionals, such would not allow recovery here.  In the cases cited, the plaintiffs were allowed to recover for a duty independent of the contract because the damages suffered were "distinct from the underlying contractual agreement."[35]  In contrast, here, the damages alleged by Plaintiffs arise under the contractual agreement.  Thus, even under the

---

[32]*See Aclys Int'l v. Equifax*, 438 F. App'x 689, 693 (10th Cir. 2011) (unpublished) (holding that "as a federal court, we are generally reticent to expand state law without clear guidance from its highest court" (internal quotation marks and citation omitted)).

[33]*See Neumann v. Carlson Envtl., Inc.*, 429 F. Supp. 2d 946 (N.D.Ill. 2006); *Green Hills (USA), LLC. v. Aaron Streit, Inc.*, 361 F. Supp. 2d 81 (E.D.N.Y. 2005).

[34]*See Neumann*, 429 F. Supp. 2d at 948; *Green Hills*, 361 F. Supp. 2d at 83-84.

[35]*Green Hills*, 361 F. Supp. 2d at 90.

standard urged by Plaintiffs, the proper recovery for ERM's alleged failures is through the contractual agreement between the parties.

Additionally, Utah case law does not support finding an independent duty in this circumstance.  In *SME Industries, Inc. v. Thompson, Ventulett, Stainback and Associates, Inc.*,[36] the Utah Supreme Court considered whether a subcontractor's professional malpractice claim against an architect was barred by the economic loss rule.[37]  The *SME* court held that "in view of the contractual foundation of the construction industry, and the ability of contractors and subcontractors to negotiate toward the risk distribution that is desired or customary" and "consistent with our prior analysis , . . the general rule in this jurisdiction prohibiting recovery of purely economic loss in negligence is applicable to a contractor's or subcontractor's negligence claim against a design professional (e.g. an architect or engineer)."[38]

Though the titles of the parties differ in this circumstance, the same reasoning applies. The City entered into a contract with ERM to oversee a construction project.  The terms of the agreement between the City and ERM are set out in a written contract that deals with the allocation of liability for third-parties.  The PSA specifically provides that ERM

> assumes no duty or responsibility under this Agreement which may be construed as being for the benefit of and/or thereby enforceable by any contractor, subcontractor, sub-subcontractor or any of their surety companies or any other third party.  [ERM]'s obligations are solely to the City.  This Agreement shall confer no third party rights whatsoever.[39]

---

[36] 28 P.3d 669.

[37] *Id*. at 681.

[38] *Id*. at 681-82.

[39] Docket No. 3 Ex. 1, at 10.

14

"Protection against economic losses caused by another's failure to properly perform," including an environmental consultant, "is but one provision [a party] may require in striking his or her bargain."[40]  Accordingly, Plaintiffs' negligence claims against ERM are akin to the types of commercial situations to which the economic loss rule was meant to apply.[41]

In sum, the duties alleged to have been breached in this case arise from the parties' contract—the PSA.  Therefore, the proper recourse for the alleged breach of those duties is the PSA.  A party is not permitted, when it is unhappy with the bargain it has struck, to plead around that bargain.  Tort remedies do not create opportunities of recovery that a party did not provide for during the meaningful exchange that cumulates in a contract.  For this reason, the Court finds that Plaintiffs are barred from recovering pure economic losses outside the contractual recoveries allowed in the PSA.

2.      OTHER PROPERTY

Plaintiffs also argue that their negligence claims are not barred by the economic loss rule because they have alleged damage to property.  ERM contends that Plaintiffs' property damage claims are improper because Plaintiffs have not alleged ownership of the canal.  ERM also argues that Plaintiffs should not be allowed to boot-strap millions of dollars of economic loss to their negligence claim based on minor allegations of property damage.

---

[40]*SME Indus.*, 28 P.3d at 681 (citation omitted).

[41]*See id.*

"The economic loss rule . . . bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property."[42]  The Utah Supreme Court recently took up the issue of the "other property" exception to the economic loss rule and held as follows:

> "Other property" is property that is outside the scope of a contract and unaffected by the contract bargain.  When property is contemplated in the scope and subject matter of a contract, the parties to the contract can only recover for damage to that property through contract remedies.  However, when property falls outside of the scope of a contract, the economic loss rule will not apply and relief may be available in tort.  Under this framework, the extent to which the economic loss rule applies in any given case depends on the contract at issue and the scope of the duties and property the contract covers.[43]

In the instant action, Plaintiffs allege that the dredging methods approved by ERM "not only failed to achieve removal of sediments, but exacerbated site conditions in the NWOD [c]anal by driving contaminants further into the native clay materials and by threatening the integrity of canal banks as a result of excess excavation."[44]   As ERM notes, Plaintiffs have not alleged ownership of the NWOD canal.  Nevertheless, the PSA directly addresses the prospect of damage to City "property."  Article XIII of the PSA is titled "DAMAGE TO PROPERTY" and provides: "[ERM] shall be responsible for any and all damage to property belonging to the City and the City's tenants to the extent caused by an act or omission of [ERM], its agents or

_____

[42]*Sunridge Dev. Corp. v. RB&G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010) (citation omitted).

[43]*Reighard v. Yates*, 2012 WL 3055737, at *5, --- P.3d ----, (Utah July 27, 2012).

[44]Docket No. 3, at 16.

employees.  [ERM] shall be responsible for repairing said damaged property and shall pay the costs therefor."[45]

Thus, the PSA addresses potential property loss by the City and creates the obligation and expectation that ERM cover any such loss.[46]  Furthermore, the PSA unambiguously addresses the reclamation activities of the NWOD canal.  For these reasons, the Court finds that the NWOD canal property is contemplated in the scope and subject matter of the PSA and Plaintiffs may only recover for damage to that property through contract remedies.

3.    FACTUAL DISPUTES

Plaintiffs cite to *Clearone Communications, Inc. v. JAS Forwarding*,[47] for the proposition that questions of fact exist that foreclose dismissal of Plaintiffs' professional negligence claims at this stage of the litigation.

In *Clearone*, the court addressed the application of the economic loss rule and found that there were "factual disputes regarding the character of relationship between the parties and what, if any, duty was owed, that cannot be resolved on a motion to dismiss."[48]  That finding, however, was premised on the assumption that a principal-agent relationship existed between the parties.[49]

---

[45]*Id*. Ex 1, at 9.

[46]*See Reighard*, 2012 WL 3055737, at *6 ("[T]he economic loss rule is particularly applicable to claims of negligent construction based on the construction industry's use of detailed and comprehensive contracts that form obligations and expectations." (internal quotation marks and citation omitted)).

[47]2009 WL 3248120 (D. Utah Oct. 7, 2009).

[48]*Id*. at *1 (citing *Banknorth, N.A.. v. BJ's Wholesale Club*, 394 F. Supp. 2d 283, 287 (D. Maine 2005)).

[49]*Id*.

Indeed, the *Clearone* court held that recovery may not be barred by the economic loss rule because "[t]he principal-agent relationship carries with it independent duties of care under tort law."[50]

In the instant case, Plaintiffs have not alleged a principal-agent relationship or similar relationship that provides independent duties of care under tort law.  For this reason, Plaintiffs' reliance on *Clearone* is misplaced.  The Court therefore finds that there are no questions of fact that foreclose dismissal of Plaintiffs' professional negligence claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny ERM's Motion for Judgment on the Pleadings as to Plaintiffs' first and third causes of action for breach of contract and grant ERM's Motion as to Plaintiffs' professional negligence claim.  It is therefore

ORDERED that ERM's Motion for Judgment on the Pleadings (Docket No. 30) is GRANTED IN PART AND DENIED IN PART.

DATED   August 30, 2012

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[50]*Id.*

18