IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE CITY CORPORATION, a Utah municipal corporation; BP PRODUCTS NORTH AMERICA INC., a Maryland corporation; and CHEVRON U.S.A. INC., a Pennsylvania corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>ERM-WEST, INC., a California corporation; COMPASS ENVIRONMENTAL, INC., a Delaware corporation; and WRS INFRASTRUCTURE AND ENVIRONMENT, INC., a North Carolina corporation, d/b/a/ WRSCOMPASS, INC.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br><br><br>Case No. 2:11-CV-1174 TS |

      This matter is before the Court on Defendant Compass Environmental, Inc. ("Compass") and WRS Infrastructure and Environment, Inc.'s ("WRS") Motion for Partial Summary Judgment, Motion for Judgment on the Pleadings, and Motion for Leave to Amend Answer to First Amended Complaint.[1]  For the reasons provided more fully below, the Court will deny Defendants' Motion for Partial Summary Judgment and grant Defendants' remaining motions.

---

    [1]Docket Nos. 54, 55, 71.

I.  BACKGROUND

This dispute arises from the environmental remediation of hydrocarbon-impacted sediments from a section of the Northwest Oil Drain ("NWOD") canal.  In 2003, Plaintiffs Salt Lake City Corporation (the "City"), BP Products North America, Inc. ("BP"), and Chevron USA, Inc. ("Chevron") entered into an Administrative Order on Consent with the Environmental Protection Agency to conduct remediation work on the NWOD Canal (the "NWOD Project").  Plaintiffs formed an association called the Northwest Oil Drain Working Group (the "Working Group") to carry out this obligation.

The Working Group had a Project Management Committee comprised of a representative of the City, BP, and Chevron.  An employee of the City, Mr. Niemeyer, was designated the initial Chair of the Project Management Committee and was authorized to "enter into Agreements relating to the Working Group that [would] be binding upon the Parties."[2]  The parties to the Working Group also provided more generally that it was their desire "to appoint the City to function as the Project Management Committee Chair to carry out the decisions made by the Project Management Committee and the Parties to coordinate and oversee the Work."[3]

In August of 2003, the City entered into an agreement with ERM-West, Inc. ("ERM"), whereby ERM agreed to fill the role of project manager on the NWOD Project.  As project manager, ERM prepared a Project Manual to be used in the bidding process.  ERM also preselected the bidders and coordinated the bidding process.

---

[2]Docket No. 64 Ex. 3, at 2–3.

[3]*Id*. at 1.

In March of 2004, Compass was awarded the NWOD Project contract. At that time, Compass entered the Document 00500 Agreement (the "500 Agreement") with the City. Under that agreement, Compass was identified as the "CONTRACTOR" and the City was identified as the "OWNER."[4] The signatory for the City was "Leroy W. Hooton Jr- Director."[5]

The 500 Agreement did not constitute the entirety of Compass's agreement to perform work on the NWOD Project. Rather, the 500 Agreement was read in conjunction with other governing documents, including the entire Project Manual and Compass's bid documents (collectively the "Compass Contract"). The Project Manual provides that "[t]he OWNER is a voluntary association of governmental and private entities, which formed a 'Working Group' to investigate the extent of hydrocarbon impacts and implement a cleanup along the NWOD canal. The Working Group consists of [the City], [BP], and [Chevron]."[6] Multiple other sections of the Project Manual also reference the Working Group and its involvement in the NWOD Project. Many such references discuss the Working Group's role as the entity with authorization to approve progress reports and compensation.[7]

The bid documents submitted by Compass in response to the Project Manual acknowledge that the NWOD Project is "planned by the [City] and the [Working Group]" and contain the assertion that Compass's "approach will meet the objectives of the NWOD Working Group by properly managing the removal of the sediment from the NWOD, satisfying all

---

[4]Docket No. 54 Ex. 2, at 1.

[5]*Id.* at 10.

[6]Docket No. 64 Ex. 8, at 1.

[7]*See id.* Exs. 7, 10.

3

applicable regulating agencies, and facilitating the complete closure of the project for the NWOD Working Group."[8] The final version of the Quality Assurance Project Plan ("QAPP"), issued after Compass was awarded the contract, provided that "[t]he Working Group has retained [Compass] as the Contractor for the sediment removal from Segments 1, 2, and 3."[9]

During the course of the NWOD Project, representatives of BP and Chevron participated in project meetings with ERM and Compass. At one point, Compass submitted a change order directly to the Working Group and Compass concedes that it received payment for its work on the project from BP and Chevron. The certificates of insurance obtained by Compass for the NWOD Project listed the City, BP, and Chevron as insureds.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[11] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[12]

---

[8]*Id*. Ex. 13, at 1.

[9]*Id.* Ex. 17, at 17.

[10]Fed. R. Civ. P. 56(a).

[11]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[12]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

Defendants Compass and WRS move for summary judgment on BP and Chevron's claims for breach of contract and breach of implied warranty, and dismissal of Plaintiffs' professional negligence claim.  Defendants also seek leave of the Court to amend their Answer to Plaintiffs' First Amended Complaint.

A.   SUMMARY JUDGMENT

Defendants argue that summary judgment is appropriate on BP and Chevron's breach of contract and breach of implied warranty claims because BP and Chevron were not parties or signatories to the 500 Agreement.  BP and Chevron contend that the Compass Contract, as well as the factual circumstances, demonstrate that BP and Chevron were in fact known and intended beneficiaries and, in any event, conflicting interpretations of the term "OWNER" create contractual ambiguity precluding summary judgment on their contract claims.

Because the Court is sitting in diversity jurisdiction, it will apply the substantive law of the State of Utah.[13]  In Utah, "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[14]  "'As a general rule, [no one] is liable upon a contract except those

---

[13]*MediaNews Grp., Inc. v. McCarthey*, 494 F.3d 1254, 1260 (10th Cir. 2007) (citing *Ahrens v. Ford Motor Co.*, 340 F.3d 1142, 1145 (10th Cir. 2003)).

[14]*Bair v. Axiom Design, LLC*, 20 P.3d 388, 392 (Utah 2001).

who are parties to it.'"[15]  "'It is axiomatic in the law of contract that a person not in privity cannot sue on a contract.'"[16]

The question of whether BP and Chevron are parties to the Compass Contract is one of contract construction.

> Contract construction "begins and ends with the language of the contract."  Thus, as the Utah Supreme Court recently explained, the interpreting court must first determine whether the contract's language is ambiguous.  A contract term is ambiguous "if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."  This is a question of law for the court to decide without reference to parol evidence.[17]

Here, it is undisputed that the 500 Agreement did not include the signature of an officer of BP or Chevron.  Nor was it signed by Mr. Niemeyer, the Chair of the Project Management Committee.  Rather, the 500 Agreement was signed by Leroy W. Hooton, a representative of the City.  It is also undisputed that the 500 Agreement defined the "OWNER" of the project as the City.  According to Defendants, these facts unambiguously demonstrate that BP and Chevron were not parties to Compass's Contract.

Defendants' narrow focus on the 500 Agreement fails to take into account the entirety of the agreement for Compass's work on the NWOD Project.  Defendants do not dispute that the Compass Contract consisted of other documents in addition to the 500 Agreement.  The Compass Contract also included the Project Manual and Compass's bids.  Those documents define the

---

[15]*Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 223 (Utah Ct. App. 1990) (quoting *Cnty. of Clark v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980)).

[16]*Id*. (quoting *Wing v. Martin*, 688 P.2d 1172, 1177 (Idaho 1984)).

[17]*United States v. Dunn*, 557 F.3d 1165, 1172 (10th Cir. 2009) (quoting *Daines v. Vincent*, 190 P.3d 1269, 1275–77 (Utah 2008)).

term "OWNER" as the Working Group. The same documents also demonstrate that Compass was aware that it was performing work on behalf of the Working Group, including BP and Chevron. Further, it is not disputed that the City was authorized, at least in some respects, to represent the Working Group. These additional facts create an ambiguity as to whether the parties intended that BP and Chevron be included as parties to the Compass Contract.

In light of the differing reasonable interpretations and uncertain meaning of the term "OWNER" in the Compass Contract, the Court finds that Compass's agreement to perform work on the NWOD Project is ambiguous.[18] Therefore, the question of whether BP and Chevron are parties to that agreement is a question of fact not amenable to summary judgment.

BP and Chevron also argue that summary judgment on their breach of contract and breach of implied warranty claims is not proper because they are intended beneficiaries under the Compass Contract. In Utah, "[o]ne who is not a party to a contract has no right to enforce it, unless such person is an intended third-party beneficiary of the contract, or an assignment of the contract has occurred."[19] The Utah Supreme Court follows Section 302 of the Restatement (Second) of Contracts to determine whether a non-party to a contract is an intended beneficiary and entitled to enforceable rights.[20] Section 302 provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if the recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

---

[18]*See id.* (citing *Daines*, 190 P.3d at 1275–76).

[19]*Colo. Cas. Ins. Co. v. Perpetual Storage, Inc.*, 2011 WL 1231832, at *2 n.2 (D. Utah March 30, 2011) (citing *Shire Dev.*, 799 P.2d at 223).

[20]*Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1386 (Utah 1989).

>a. The performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>b. The circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.[21]

"The intention of the parties is to be determined from the terms of the contract as well as the surrounding facts and circumstances. Also, the intent of the contracting parties to confer a separate and distinct benefit must be clear."[22] "A third party who benefits only incidentally from the performance of a contract has no right to recover under that contract."[23]

As discussed, the Compass Contract contains multiple definitions of the term "OWNER." One such definition includes BP and Chevron under the umbrella of "OWNER." If the parties to the Compass Contract intended that BP and Chevron be included in that definition, then it follows that BP and Chevron would have been intended to receive the benefit of the Compass Contract. Additionally, the bid documents submitted by Compass demonstrate Compass's intent at that time to "meet the objectives of the NWOD Working Group."[24] It is undisputed that the Working Group included BP and Chevron. The conflicting definition of "OWNER" and manifestation of intent on the part of Compass demonstrate, at the very least, a disputed issue of fact as to whether BP and Chevron were intended beneficiaries of the Compass Contract.

---

[21]Restatement (Second) of Contracts § 302, at 439–40 (1981).

[22]*Simantob v. Mullican Flooring, L.P.*, 2010 WL 2486549, at *5 (D. Utah June 15, 2010) (*citing Ron Case Roofing*, 773 P.2d at 1386).

[23]*Broadwater v. Old Republic Sur.*, 854 P.2d 527, 537 (Utah 1993).

[24]Docket No. 64 Ex. 13, at 1.

In sum, the Court finds that there are disputed issues of fact that preclude summary judgment in favor of Defendants on BP and Chevron's breach of contract and breach of implied warranty claims.

B.     PROFESSIONAL NEGLIGENCE

Defendants move for judgment on the pleadings as to Plaintiffs' professional negligence claim. Defendants argue that judgment is proper on that claim because any such claim is barred by the economic loss rule. Plaintiffs concede that, under the reasoning of this Court's prior decision dismissing a similar professional negligence claim against Defendant ERM, dismissal is appropriate.[25] In light of Plaintiffs' concession, and for the same reasons provided in this Court's prior decision, the Court will grant Defendants' Motion for Judgment on the Pleadings.

C.     LEAVE TO AMEND

Defendants move the Court for leave to amend paragraph 64 of their Answer to Plaintiffs' First Amended Complaint to reflect Defendants' position that Compass entered into a contract with only the City and not the Working Group. Paragraph 64 of Defendants' Answer currently reads in relevant part as follows:

> Compass admits the allegations in this paragraph and alleges that the Working Group and Compass entered into a design/build mixed price and unit price contract that totaled $2,795,716 for the removal and disposal of shallow sediment down to the original clay liner surface of the canal to restore flow capacity to the NWOD.[26]

---

[25]*See* Docket No. 48, at 11–15.

[26]Docket No. 33, at 12 (internal quotation marks omitted).

Defendants argue that it was not their intention to state that Compass entered into a contract with the Working Group and cite other sections of their Answer and affirmative defenses in support of their assertion that paragraph 64 was an erroneous admission.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave." The Court is further instructed to "freely give leave when justice so requires."[27]

Plaintiffs have not consented in writing to Defendants filing an amended answer. However, in their response, Plaintiffs state that they "do not oppose the amendment as long as it has no bearing on Compass' [summary judgment] motion."[28] The Court finds that Defendants' proposed amendment has no bearing on Defendants' Motion for Partial Summary Judgment. Further, based on the Defendants' Answer, affirmative defenses, and the affidavit of Justin Scott, the Court finds that it is in the interests of justice to allow Defendants leave to amend. Accordingly, the Court will grant Defendants' Motion for Leave to Amend Answer to First Amended Complaint.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion for Partial Summary Judgment (Docket No. 54) is DENIED. It is further

ORDERED that Defendants' Motion for Judgment on the Pleadings (Docket No. 55) is GRANTED. It is further

---

[27] Fed. R. Civ. P. 15(a)(2).

[28] Docket No. 75, at 2.

ORDERED that Defendants' Motion for Leave to Amend Answer to First Amended Complaint (Docket No. 71) is GRANTED.

DATED   September 5, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge