IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SALT LAKE CITY CORPORATION, a Utah municipal corporation; BP PRODUCTS NORTH AMERICA INC., a Maryland corporation; and CHEVRON U.S.A. INC., a Pennsylvania corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> ERM-WEST, INC., a California corporation; COMPASS ENVIRONMENTAL, INC., a Delaware corporation; and WRS INFRASTRUCTURE AND ENVIRONMENT, INC., a North Carolina corporation, d/b/a/ WRSCOMPASS, INC., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING ERM'S MOTION TO DISMISS <br><br><br> Case No. 2:11-CV-1174 TS |

This matter is before the Court on Defendant ERM-West, Inc.'s ("ERM") Motion to Dismiss.[1] The Court heard oral argument on ERM's Motion on October 24, 2013. Having

---

[1] Docket No. 88.

1

considered the arguments raised at oral argument, reviewed the materials submitted by the parties, and being otherwise fully informed, the Court will grant ERM's Motion.

## I.  BACKGROUND

This dispute arises from the environmental remediation of hydrocarbon-impacted sediments from a section of the Northwest Oil Drain ("NWOD") Canal.  On August 12, 2003, Plaintiffs Salt Lake City Corporation (the "City"), BP Products North America, Inc. ("BP"), and Chevron USA, Inc. ("Chevron") (referred to collectively as "Plaintiffs") entered into an Administrative Order on Consent (the "AOC") with the Environmental Protection Agency ("EPA") to conduct remediation on the NWOD Canal.  Plaintiffs formed an association called the Northwest Oil Drain Working Group (the "Working Group") to carry out this obligation.

Pursuant to the AOC, Plaintiffs were required to effect complete physical removal of hydrocarbon-impacted sediments from the NWOD canal.  The AOC also specifically required that the Working Group designate a project coordinator to be responsible for administration of the actions required under the AOC.  On August 23, 2003, the City entered into a Professional Services Agreement (the "PSA") with ERM on behalf of the Working Group.

In oral argument, Plaintiffs represented that the PSA was entered into prior to the AOC.  The timing of the execution of the PSA is not readily ascertainable from the documents attached as exhibits to Plaintiffs' Complaint.  However, the allegations of Plaintiffs' Second Amended Complaint provide that the AOC was entered into on August 12, 2003, and the PSA was entered into on August 23, 2003.  For purposes of this Motion, the Court will accept as true the allegations of Plaintiffs' Second Amended Complaint.

According to the Recitals of the PSA, ERM was to: (1) "provide the [Working Group] Project Management Services to oversee the construction phase of the Northwest Oil Drain clean up;" (2) "handle all 'daily duties' that are required consistent with the remedial alternative selected;" and (3) "assist the Working Group in preparing submittals required in the AOC."[2] Pursuant to the PSA, ERM's services were to "be performed in accordance with the best professional judgment and skill."[3]

ERM was to assist the Working Group in selecting a remediation contractor, including developing project technical specifications, construction bid documents, and managing the bidding process.[4] As Project Manager, ERM was also required to develop a work plan to accomplish the complete removal of hydrocarbon-impacted sediments that included, among other documents, a Quality Assurance Project Plan and Sampling and Analysis Plan to ensure completion of project objectives.[5] "As Project Manager, ERM was required to 'monitor all work items for compliance with project documents.'"[6] "During construction, ERM was to 'manage all daily elements of the implementation' to ensure that all project requirements were met, including

---

[2]Docket No. 85 Ex. 1, at 1.

[3]*Id*. Ex. 1, at 2.

[4]*See id.* at 5–6 (citing Docket No. 85 Ex. 1, at 1–3).

[5]*See id.* at 6 (citing Docket No. 85 Ex.1, at 4–5).

[6]*Id*. (quoting Docket No. 85 Ex. 1, at 6).

the project's ultimate goal of complete physical removal of all hydrocarbon-impacted sediments."[7]

On January 15, 2004, the Working Group sent a letter to the EPA designating ERM as its "Project Coordinator to oversee work in the PRP Group Work Area, as defined in the AOC."[8] "In short, ERM was hired and designated as the Working Group's agent to coordinate the remediation of the NWOD Canal and ensure compliance with the AOC on behalf of the Working Group."[9]

The subject of the instant Motion is Plaintiffs' fifth cause of action for breach of agency duties, brought on behalf of all Plaintiffs against ERM. Plaintiffs allege that they "hired ERM as their Project Coordinator and agent to administer the Working Group's duties under the AOC, and they specifically designated ERM as their representative and agent to the EPA."[10] Plaintiffs further allege that ERM "consented to such an agency relationship by . . . specifically providing in the Compass Contract (which ERM drafted) that it was the OWNER's representative and agent and by acting as such throughout the course of the NWOD Project."[11]

---

[7]*Id*. (quoting Docket No. 85 Ex. 1, at 6).

[8]*Id.* Ex. 2, at 2.

[9]*Id.* at 7.

[10]*Id*. at 25.

[11]*Id*. (internal quotation marks and emphasis omitted).

4

According to Plaintiffs, ERM breached its duties as Plaintiffs' agent by: (1) "failing to ensure compliance with project objectives;"[12] (2) "failing to perform its services in accordance with the best professional judgment and skill, as required by the PSA;"[13] (3) "recommending a deficient remediation technology;"[14] (4) "developing a deficient sampling method and failing to even ensure proper implementation of that method;"[15] (5) "failing to properly oversee the construction;"[16] (6) "certifying that the project was complete and allowing Compass to demobilize when in fact project objectives had not been met;"[17] and (7) "by failing to adequately inform the Working Group of the gravity of the sampling exceedances and of its failure to obtain proper approval from the EPA for those exceedances."[18]

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiffs as

---

[12] *Id*. at 26.

[13] *Id.* (internal quotation marks omitted).

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] *Id*.

the nonmoving party.[19] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[20] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[21]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[22] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[23]

As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[24]

---

[19]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[20]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22]*Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[23]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[24]*Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

the nonmoving party.[19] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[20] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[21]

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[22] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[23]

As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief.[24]

---

[19]*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[20]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22]*Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[23]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[24]*Iqbal*, 556 U.S. at 679 (alteration in original) (internal quotation marks and citations omitted).

In considering the adequacy of a plaintiff's allegations in a complaint subject to a motion to dismiss, a district court not only considers the complaint, but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[25] Thus,

> notwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "[a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[26]

### III. DISCUSSION

At issue is whether Plaintiffs' fifth cause of action for breach of agency duties is barred by the economic loss rule.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm."[27] "[T]he economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks."[28]

Application of the economic loss rule is not limited to contracting parties. "Exempting strangers to a contract from the economic loss rule would convert a contract cause of action into

---

[25]*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B WRIGHT & MILLER § 1357 (3d ed. 2004 & Supp. 2007)).

[26]*Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

[27]*SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs.*, 28 P.3d 669, 680 (Utah 2001).

[28]*Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1006 (Utah 2010).

one for tort."²⁹ As such, Utah courts have frequently applied the economic loss rule to bar tort claims brought by non-contracting parties.³⁰

It is settled law that "[w]here the economic loss rule is at issue, the 'initial inquiry' becomes 'whether' a duty exists independent of any contractual obligations between the parties."³¹ "A duty may arise from one of several sources. Duties may emanate from bargains, and therefore be within the ambit of contract law, and duties may also emanate from the interdependent nature of human society, in which case they are governed by tort principles."³²

"[O]nce there is a contract, any tort claim must be premised upon an independent duty that exists apart from the contract. All contract duties, and all breaches of those duties must be enforced pursuant to contract law."³³

> The independent duty principle is a means of measuring the reach of the economic loss rule. When a duty exists that does not overlap with those contemplated in a

---

²⁹*Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 244 (Utah 2009).

³⁰*See Am. Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182 (Utah 1996) (barring condominium homeowners from collecting economic damages from contractors for faulty construction in the plumbing and mechanical systems of the building where homeowners were not parties to any of the construction contracts and had no enforceable rights as third-party beneficiaries); *Fennell v. Green*, 77 P.3d 339 (Utah Ct. App. 2003) (barring a homeowner's claim against a developer for negligent misrepresentation and finding that "the economic loss rule applies to prevent the imposition of 'economic expectations' on non-contracting parties").

³¹*Davencourt*, 221 P.3d at 244 (quoting *Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002)).

³²*Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012) (internal quotation marks and citations omitted).

³³*Id*. at 1177 (internal quotation marks and citation omitted).

contract, "the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule."[34]

Plaintiffs argue that the economic loss rule does not apply because ERM owed Plaintiffs an independent duty of care as their agent. ERM does not appear to contend that Plaintiffs have not alleged facts sufficient to maintain an agency relationship;[35] rather, ERM contends that Plaintiffs' agency claims are barred by the economic loss rule because the claims are not brought independent of the PSA.

Plaintiffs cite *Clearone Communications, Inc. v. JAS Forwarding*[36] for the proposition that the allegation of an agency relationship forecloses application of the economic loss rule. Plaintiffs overstate the holding of *Clearone*. In that case, the court declined to apply the economic loss rule based on its finding that the case involved "factual disputes regarding the character of the relationship between the parties and what, if any, duty was owed, that cannot be resolved on a motion to dismiss."[37] Unlike *Clearone*, here the Court is not confronted with any factual disputes as to the duties or standard of care owed by ERM.

---

[34]*Id*. (quoting *Hermansen*, 48 P.3d at 240).

[35]*See Wardley Corp. v. Welsh*, 962 P.2d 86, 89 (Utah Ct. App. 1998) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (internal citations omitted); *City of Grantsville v. Redevelopment Agency of Tooele City*, 233 P.3d 461, 473 (Utah 2010) ("The manifestation of consent to form an agency relationship can be established by contract or implied by the factual circumstances.").

[36]2009 WL 3248120 (D. Utah Oct. 7, 2009).

[37]*Id*. at *3.

Plaintiffs do not dispute that the standards of care alleged in their breach of contract and breach of agency duties claims are indistinguishable. Nevertheless, Plaintiffs argue that their breach of agency claims need not be different to meet the "independent duty" requirement of the economic loss rule. The Court is unable to find support for such a proposition in Utah law. Rather, courts that have considered this issue have required that "independent" claims allege "acts or omissions [that] resulted in [the] breach of an independent duty not already defined by contract."[38] Thus, the party seeking to maintain a tort claim for purely economic losses must allege the violation of a standard of care that is not coextensive with that contained in the relevant contracts.

A recent case from this court, *Stewart Title Guaranty Co. v. Summit Escrow and Title Agency, LCC*,[39] is illustrative of this point. In that case, Stewart Title brought claims against Summit for negligence and breach of contract. Stewart Title's negligence claim was premised on Summit's status as Stewart Title's agent, a relationship that was contemplated in the parties' contract. The court reviewed Stewart Title's allegations of breach of agency duties and found that its "negligence claim is indistinguishable from the parties' contractually created duties."[40]

---

[38]*Interwest Constr. v. Palmer*, 886 P.2d 92, 101 (Utah Ct. App. 1994), *aff'd*, 923 P.2d 1350 (Utah 1996) (citing *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799–800 (Utah 1985)); *see also N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995) (holding that "defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations," because a "tort obligation is a duty imposed by law . . . apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract").

[39]2012 WL 2368214 (D. Utah June 21, 2012).

[40]*Id*. at *3.

For this reason, the court concluded that "Stewart Title's negligence claim is not independent from its breach of contract claim" and is "barred by the economic loss rule."[41]

This Court's application of the "independent" language of the economic loss rule in *Stewart Title* is not unique. In *Interwest Construction v. Palmer*, the Utah Court of Appeals applied the economic loss rule to dismiss tort claims that it found "exactly co-extensive with [the parties'] contractual obligations."[42]

Though not binding precedent, the Court is also persuaded by the reasoning of the Colorado Supreme Court in *BRW, Inc. v Dufficy & Sons, Inc.*[43] In *BRW*, a subcontractor on a public-works project attempted to sue the project engineer and inspector for negligence and negligent misrepresentation. The subcontractor argued, and the court of appeals held, that the economic loss rule did not bar the subcontractor's claim against the engineer because the engineer owed the contractor and subcontractors an independent duty of care. On appeal, the Colorado Supreme Court reversed the court of appeals, holding that the "economic loss rule requires the court to focus on the contractual relationship between the parties, rather than their professional status, in determining the existence of an independent duty of care."[44]

In considering the subcontractor's negligence claim, the *BRW* court "focus[ed] first on the contractual context among and between the parties to see whether there was a contractual

---

[41] *Id.*

[42] *Interwest*, 886 P.2d at 101.

[43] 99 P.3d 66 (Colo. 2004).

[44] *Id.* at 71.

relationship that established the duty of care alleged to have been breached."[45] The court instructed that, were it to "conclude that the duty of care owed by BRW and PSI was memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms."[46] After comparing the parties' contractual duties to the common law duties the defendants were alleged to have breached, the court concluded that the contracts required the defendants to meet the same standards of care applicable to the subcontractor's tort claims. Based on this finding, the *BRW* court held that "the duties allegedly breached were contained in the network of interrelated contracts, and the economic loss rule applies."[47]

Reviewing the allegations of Plaintiffs' Second Amended Complaint, the Court finds that ERM's alleged breach of its standard of care as Plaintiffs' project coordinator and agent is the same and coextensive with its alleged breach of the PSA. Further, each of the alleged violations of ERM's common law duties are expressly provided for in the PSA. Therefore, Plaintiffs have failed to demonstrate that ERM breached any "duties, rights, or obligations *independent* of those

---

[45]*Id.* at 73 (citing *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)).

[46]*Id.* at 74 (citing *Grynberg*, 10 P.3d at 1270; *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 992 (1994) (explaining that, "[t]he construction industry . . . would suffer [if tort and contract remedies were allowed to overlap], for it is in this industry that we see most clearly the importance of the precise allocation of risk as secured by contract")).

[47]*Id.*

imposed upon [it] under contract."[48]  Accordingly, Plaintiffs' agency claims are barred by the economic loss rule.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant ERM's Motion to Dismiss Plaintiffs' Agency Claim (Docket No. 88) is GRANTED.

DATED   October 30, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[48]*Interwest*, 886 P.2d at 101 (emphasis in original).